# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TEKFOR, INC., | ) | CASE NO. 5:12-cv-1341 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| SMS MEER SERVICE, INC., | ) | **ORDER** |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court upon the motion to dismiss filed by defendant SMS Meer Service, Inc. ("SMS"). (ECF No. 6.) SMS filed a brief in support of its motion (ECF No. 7), Tekfor responded in opposition (ECF No. 8), and SMS filed a reply (ECF No. 10). The matter is ripe for adjudication. For the reasons that follow, defendant's motion to dismiss is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following is a summary of relevant allegations made by Tekfor in its complaint. Tekfor is in the business of, among other things, producing steel parts and components for the automotive industry. (ECF No. 1 ¶ 5.) SMS is in the business of, among other things, providing repair and service parts to automotive suppliers, such as Tekfor. (*Id.* at ¶ 8.)

In or around April 2001, Tekfor's parent company purchased a mechanical forging press known as the Eumuco SP 250c (the "Eumuco"), which Tekfor used at its facility in Wooster, Ohio to manufacture and supply parts to automobile industry suppliers. (*Id.* at ¶¶ 10–

1

12.) Tekfor contracted with SMS to perform a "modernization" of the Eumuco. From 2003 to 2010, SMS provided services and spare parts to Tekfor to ensure that the Eumuco was functioning properly. (*Id.* at ¶ 20.) During that time, the parties' course of dealing was for Tekfor to issue a purchase order and SMS to reply with an order acknowledgement referencing the specific purchase order by number. (*Id.* at ¶ 21.)

Tekfor's purchase orders contain language in the center stating that Tekfor "wish[es] to place an Order under our Terms of Purchase." (*Id.* at ¶ 22.) SMS's order acknowledgments contain similar language, stating in the lower-left corner that "Your order will be processed in accordance with our terms and conditions per SMS Meer Service Inc. Form 100-T-9 except as noted above." Additionally, in the "Description" column of the acknowledgment it states: "ALL OTHER RATES AND EXPENSES IN ACCORDANCE WITH SMS-MEER US TERMS AND CONDITIONS, FORM 100T9 (10-09)." (*Id.* at Ex. B.)

In 2010, Tekfor began experiencing problems with the Eumuco and contacted SMS to perform repairs. (*Id.* at ¶¶ 26–28.) SMS sent a representative to investigate the Eumuco's condition. SMS's representative observed damage to the machine and recommended that parts be purchased and that SMS make the necessary repairs. (*Id.* at ¶¶ 29–31.)

In accordance with the history of transactions between the parties, Tekfor began issuing purchase orders to SMS, in response to which SMS would send an acknowledgment. (*Id.* at ¶ 33.) On or about November 30, 2010, Tekfor issued Purchase Order No. 33537 for parts. (*Id.* at ¶ 38). Instead of sending its usual order acknowledgment, SMS sent an email with an attached letter that stated, in part, "Thank you for Purchase Order No. 33537 . . . If you agree that our enclosed Terms and Conditions are the only ones applying to this purchase, please sign below . .

. Upon receipt, we will provide an Order Acknowledgment and proceed with processing your Purchase Order." (*Id.* at ¶¶ 39–41.) Tekfor did not sign or return the letter to SMS (*Id.* at ¶ 42), but SMS processed the order nonetheless (*Id.* at ¶ 43). This was the only time SMS responded to a purchase order from Tekfor with a letter, rather than an order acknowledgment. (*Id.* at ¶ 44.)

In December 2010, SMS, aided by another company with which SMS contracted, cut the newly-purchased parts to size and delivered them to Tekfor for reassembly of the Eumuco. (*Id.* at ¶¶ 45–48.) SMS completed reassembly of the Eumuco and thereafter performed a "24-hour break-in" of the rebuilt machine. (*Id.* at ¶¶ 48–49.)

On December 16, 2010, Tekfor began running parts on the Eumuco and, almost immediately, began to notice "anomalies" with the machine's operation and performance. (*Id.* at ¶¶ 50–51.) Tekfor reported the anomalies to SMS and demonstrated them to SMS's representatives on December 20, 2010. (*Id.* at ¶¶ 52–53.) SMS denied there were problems with the machine. (*Id.* at ¶ 54.) Continuing to see the same anomalies, Tekfor informed SMS's representative of its concerns when he returned to Tekfor's facility in January 2011 and again in March 2011. (*Id.* at ¶ 55–56.) SMS's representative continued to deny that there were problems with the Eumuco or with the work performed by SMS in December 2010. (*Id.* at ¶ 57.)

Due to SMS's refusal to acknowledge the issues with the Eumuco, Tekfor hired a third-party consultant to inspect the machine. (*Id.* at ¶ 58.) The consultant identified certain problems with the machine (*Id.* at ¶ 59); thereafter, SMS returned to the facility to attempt to address the problems but was unsuccessful. (*Id.* at ¶¶ 60–62.)

After further discussion, Tekfor and SMS agreed that SMS would return to repair all of the problems with the Eumuco. (*Id.* at ¶ 64.) Tekfor advised its customers that the Eumuco

3

would be out of commission for approximately 5 weeks, during which time Tekfor would be unable to produce the parts it normally made on the machine. (*Id.* at ¶ 65.) SMS completed its work in four weeks after starting the project. (*Id.* at ¶ 68.)

When Tekfor resumed operation of the Eumuco, a longtime customer of parts produced with the machine, SKF, informed Tekfor that it no longer needed 12,000 parts per month, desiring only 2,000 parts per month going forward. (*Id.* at ¶ 69.) Tekfor believes that SKF found another supplier for those parts during the time the Eumuco was down for repairs. (*Id.* at ¶ 70.) On the supply side, Tekfor's steel supplier demanded that Tekfor take delivery of the full volume of steel it ordered, the amount of which Tekfor calculated based on the pre-repair volume of parts ordered by SKF. (*Id.* at ¶ 72.)

Meanwhile, Tekfor alleges it has determined that the Eumuco is "irrevocably damaged" and that its continued operation "is not only ineffective but is potentially dangerous to workers." (*Id.* at ¶ 73.) As a result, Tekfor contends it "is left with no other choice" but to "terminate all operations of the Eumuco" and write-off the entire value of the machine on its books, "thereby incurring a loss of $2.4 million." (*Id.* at ¶ 74.)

Tekfor has now filed its complaint against SMS asserting claims for breach of contract, promissory estoppel, unjust enrichment, breach of express warranty, and breaches of the implied warranties of merchantability and fitness. In response, SMS filed the subject motion to dismiss.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, […] a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### III. ANALYSIS

The Court must deny a motion to dismiss if genuine issues of material fact remain unresolved. *McCullough v. Howard Hanna Co.*, No. 1:09CV2858, 2010 WL 1258112, at *2

(N.D. Ohio Mar. 26, 2010); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).[1] In its motion, SMS sets forth three alternative arguments: (1) Tekfor's complaint should be dismissed for failure to state a claim because the parties agreed to express arbitration, forum selection, and choice of law clauses; (2) Tekfor fails to state a claim as to counts two (promissory estoppel) and three (unjust enrichment); and (3) Tekfor's claims for damages should be stricken or limited. (ECF No. 7 at 51–52.)[2] Because the factual record is entirely undeveloped and numerous genuine issues of material fact remain unresolved, SMS's motion must be denied.

**A. SMS's Motion to Dismiss on Account of the Arbitration, Forum Selection, and Choice of Law Clauses Allegedly Contained in the Parties' Agreement Is Premature**

The crux of this issue is what role, if any, is played by the additional terms allegedly included in Tekfor's purchase orders and SMS's order acknowledgements with respect to the parties' overall agreement. Each side argues that its terms apply and the other side's do not. However, the arguments are predicated upon the resolution of numerous issues of fact that

---

[1] Tekfor asserts in its opposition that SMS's alleged Terms and Conditions, attached as Exhibit 1 to SMS's motion, may not be considered by the Court in ruling on a 12(b)(6) motion. (ECF No. 8 at 75–76.) Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)), and a court considering such matters must convert the motion to dismiss into one for summary judgment. Fed. R. Civ. P. 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Further, a court is not precluded from considering unauthenticated documents on a motion to dismiss where the opposing party "do[es] not question the substantive validity, accuracy, or completeness of the documents." *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 642 (N.D. Ohio 2012). Here, SMS's Terms and Conditions are referenced in ¶ 23 and Exhibit B of Tekfor's complaint and, as the document relates to the obligations of the parties, it is clearly essential to the claims contained therein. Moreover, Tekfor does not object to the validity, accuracy, or completeness of SMS's exhibit, but simply the fact that it is not authenticated. Accordingly, the Court is permitted to consider the document at this stage.

[2] All references to specific page numbers in the record refer to the continuous page numbering applied by the electronic docketing system.

have not been and cannot be decided at this time, including whether each party provided its terms to the other, whether Tekfor objected to SMS's terms, and whether, under Ohio Rev. Code § 1302.10—Ohio's "battle of the forms" provision—the additional terms "materially alter" the terms of the initial offer.[3] The factual record in the instant case is entirely undeveloped, so much so that parts of the alleged contract itself are not yet included. Tekfor did not attach a purchase order to its complaint, and SMS, despite recognizing that fact, either could not or chose not to attach one to its motion.[4] Because genuine issues of material fact remain unresolved, SMS's motion must be denied.[5]

**B.     SMS's Motion to Dismiss Counts Two (Promissory Estoppel) and Three (Unjust Enrichment) of Tekfor's Complaint Is Premature**

In addition to seeking dismissal of Tekfor's entire complaint, SMS argues specifically that Counts Two and Three, based on promissory estoppel and unjust enrichment, respectively, should be dismissed, because Tekfor's breach of contract claim forecloses it from bringing claims on these quasi-contractual theories. SMS is incorrect on the law.

"Promissory estoppel and unjust enrichment are quasi-contractual or equitable claims that may be pled in the alternative to a breach of contract claim." *Bonner Farms, Ltd. v. Power Gas Mktg. and Transmission, Inc.*, No. 5:04 CV 2188, 2007 WL 2463247, at *7 (N.D. Ohio Aug. 28, 2007); *see also Cheers Sports Bar & Grill v. DIRECTV, Inc.*, 563 F.

---

[3] SMS does not allege that Tekfor's omission of certain factual information from its complaint renders its complaint, or any of its individual claims, deficient under Rule 8.
[4] SMS itself contributes to the list of unresolved factual issues by pointing out that the title of the document referred to in Tekfor's complaint as Tekfor's terms and conditions differs from that of the document Tekfor attached to its complaint, suggesting that the document provided may not be a true representation of Tekfor's terms and conditions.
[5] As an alternative to dismissal, SMS requests that the Court limit discovery to determining the applicable terms of the parties' contract. Tekfor objects, asserting that this could lead to duplicative depositions, additional briefing, and waste of Court resources. The Court agrees with Tekfor. Discovery shall proceed without limitation.

Supp.2d 812, 819 (N.D. Ohio 2008) (Under Ohio law, "[a] claim for unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute [ … ] ."). Tekfor cannot ultimately recover under both theories, but may plead both in the alternative. *See Bonner*, 2007 WL 2463247, at *7. Accordingly, as with SMS's other arguments, this one is premature.

**C.     SMS's Attempts to Limit Tekfor's Damages Are Premature**

Lastly, SMS attacks Tekfor's measures of direct and consequential damages, asking the Court to "strike those items […] that are legally improper." (ECF No. 7 at 72.) Consistent with its previous arguments, however, these arguments are not yet ripe for consideration. The parties disagree on whether the Eumuco can be restored to working condition and whether certain consequential damages were foreseeable. Again, because unresolved issues of material fact exist, SMS's request to strike portions of Tekfor's damages is denied.

### IV. CONCLUSION

For the foregoing reasons, defendant SMS's motion to dismiss is **DENIED**.

**IT IS SO ORDERED**.

Dated: February 25, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**